## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-22287

DANIA DIAZ,

     *Plaintiff*,

v.

SANDS POINTE OCEAN BEACH RESORT
CONDOMINIUM ASSOCIATION, INC., a
Florida Not-for-Profit Corporation, AVI
HARPAZ, *individually*, MEL HERMAN,
*individually*, JACOB KATZ, *individually*,
ARTHUR WIENER, *individually*, and FELIX
WEINSTEIN, individually,

     *Defendants*.

_____/

## <u>COMPLAINT</u>

     **COMES NOW**, Plaintiff, DANIA DIAZ, hereinafter referred to as "Diaz" or "Plaintiff",

by and through her undersigned counsel, hereby files her complaint against Defendants, SANDS

POINTE OCEAN BEACH RESORT CONDOMINIUM ASSOCIATION, INC., a Florida Not-for-

Profit Corporation (hereinafter "Sands Pointe" or the "Association"), AVI HARPAZ, individually

(hereinafter "Harpaz"), MEL HERMAN, individually (hereinafter "Herman"), JACOB KATZ,

individually (hereinafter "Katz"), ARTHUR WIENER, individually (hereinafter "Wiener"), and

FELIX WEINSTEIN, individually (hereinafter "Weinstein"), collectively referred to as

"Defendants", and as grounds alleges:

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami ▪ Info@MLG.Miami**

## JURISDICTION AND VENUE

1.      This is an action brought by Diaz under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. to recover unpaid wages, liquidated damages, and reasonable attorney's fees and costs from Defendants.

2.      At all times material hereto, Diaz is a resident of Miami-Dade County, Florida, within the jurisdiction of this Honorable Court.

3.      At all times material hereto, Diaz was employed by Defendants in Miami-Dade County, Florida within the jurisdiction of this Honorable Court.

4.      The Corporate Defendant, Sands Pointe, is a Florida Not-for-Profit Corporation and conducted business in Miami-Dade County where Diaz was employed.

5.      The individual Defendant, Harpaz, is believed to be a resident of Florida but was engaged in the business of Sands Point therefore, within the jurisdiction of this Honorable Court.

6.      The individual Defendant, Harpaz, is an employer as defined in 29 U.S.C. § 203(d), as he had operational control over the Corporate Defendant, Sands Pointe, and was directly involved in decisions affecting employee compensation.

7.      The individual Defendant, Herman, is believed to be a resident of Florida but was engaged in the business of Sands Point therefore, within the jurisdiction of this Honorable Court.

8.      The individual Defendant, Herman, is an employer as defined in 29 U.S.C. § 203(d), as he had operational control over the Corporate Defendant, Sands Pointe, and was directly involved in decisions affecting employee compensation.

9.      The individual Defendant, Katz, is believed to be a resident of Florida but was engaged in the business of Sands Point therefore, within the jurisdiction of this Honorable Court.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami ▪ Info@MLG.Miami**

10.    The individual Defendant, Katz, is an employer as defined in 29 U.S.C. § 203(d), as he had operational control over the Corporate Defendant, Sands Pointe, and was directly involved in decisions affecting employee compensation.

11.    The individual Defendant, Wiener, is believed to be a resident of Florida but was engaged in the business of Sands Point therefore, within the jurisdiction of this Honorable Court.

12.    The individual Defendant, Wiener, is an employer as defined in 29 U.S.C. § 203(d), as he had operational control over the Corporate Defendant, Sands Pointe, and was directly involved in decisions affecting employee compensation.

13.    The individual Defendant, Weinstein, is believed to be a resident of Florida but was engaged in the business of Sands Point therefore, within the jurisdiction of this Honorable Court.

14.    The individual Defendant, Weinstein, is an employer as defined in 29 U.S.C. § 203(d), as he had operational control over the Corporate Defendant, Sands Pointe, and was directly involved in decisions affecting employee compensation.

15.    Jurisdiction over this action is conferred upon this Honorable Court by 28 U.S.C. § 1331 and 29 U.S.C §216(b).

16.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims occurred in this district and Defendants conduct business in this district.

## **FAIR LABOR STANDARDS ACT COVERAGE**

17.    The Fair Labor Standards Act applies to Sands Pointe as Sands Pointe had and/or has employees involved in Interstate Commerce and/or handles goods that have moved through Interstate Commerce.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami ▪ Info@MLG.Miami**

18.     At all times material hereto, Sands Pointe operates a condominium association, selling and marketing their services to condominium residents and potential residents throughout the United States and accepting payments which are transported across state lines.

19.     At all times material hereto, Sands Pointe obtains and solicits funds from non-Florida sources, uses telephonic transmissions over state lines to do its business, transmits funds outside the State of Florida, accepts Credit Card payments, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.

20.     At all times material hereto, Sands Pointe's annual gross revenue exceeded $500,000.00 per annum.

21.     By reason of the foregoing, the Employer is and was, during all times hereafter mentioned, an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

## **FACTUAL ALLEGATIONS**

22.     Diaz was employed by Defendants in Sunny Isles Beach, Florida under a written Employment Contract. A true and correct copy of the Employment Contract is attached and incorporated herein as **Exhibit A**.

23.     Defendants intentionally and willfully misclassified Diaz as a Manager to circumvent the FLSA.

24.     The Employment Contract (hereinafter, the "Contract") provides for a five-year term commencing on February 28, 2022 and terminating on February 27, 2027.

25.     Defendants agreed to compensate Diaz at a rate of $100,000.00 per year as shown in section 6(A) of the Contract.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami ▪ Info@MLG.Miami**

26.     The Contract provided for termination only under specific conditions, including: a) Section 7(A) Termination by Cause, which required the Association to establish specific and justifiable grounds for termination; and (b) Section 7(B) Termination for Cause, which required the Association to compensate Plaintiff for the full amount of the unpaid contract term, along with accrued unused vacation pay.

27.     Throughout her tenure, Plaintiff performed her duties professionally and in compliance with all contractual obligations.

28.     Despite Plaintiff's positive record, Defendants issued a "Notice to Cure" on or about January 22, 2025, citing alleged performance deficiencies, all of which were improper or caused directly by the Association's own actions by approval.

29.     Plaintiff responded to the Notice to Cure, denying all allegations and demonstrating that the accusations were either baseless, beyond her control, or due to Defendants' interference and mismanagement.

30.     Defendants further engaged in a campaign of harassment and hostility, making Plaintiff's working conditions intolerable in an attempt to force her resignation and evade their contractual obligations.

31.     Defendants subsequently improperly terminated the Contract with two years remaining on the Contract, without just cause, and with immediate effect, on Sunday, February 23, 2025.

32.     Defendant's actions were calculated to fabricate grounds for a "for cause" termination to avoid paying Plaintiff the full amount due under the Contract and install a successor management company that was already under separate contract.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

33.     At the time of termination, damages under the Contract amounted to $201,917.81 plus $11,538.48 in unused vacation pay, totaling $213,456.29.

34.     Additionally, in the final paycheck tendered to Diaz, Defendants improperly and illegally withheld $1,500.00 despite Diaz having worked the necessary amount of time and provided the necessary services to entitle her to full payment.

35.     As of the filing of this complaint, Diaz is owed unpaid wages for labor performed for the benefit of the Defendants.

36.     The aforementioned unpaid wages are in addition to, and separate and distinct from, the contract damages referenced in paragraph 32, above.

37.     Defendants knew or should have known that Diaz was being wrongfully denied her earned wages in violation of the Fair Labor Standards Act.

38.     All conditions precedent to the filing of this lawsuit have occurred, been performed, or been waived.

## COUNT I
## FAILURE TO MAKE PROMPT PAYMENT – SANDS POINTE

39.     Diaz re-alleges and re-avers paragraphs 1 through 38 as fully set forth herein, as to each Defendant.

40.     Towards the end of each year, the residents of Sands Pointe make voluntary contributions to a fund for the purpose of providing a holiday bonus/tip to the employees of Sands Pointe (the "Holiday Fund").

41.     The Association collects and holds funds donated for the Holiday Fund and later takes care of distributing the funds to all the Association's employees.

Morera Law Group, P.A.
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ ph 786.789.4546 ▪ fax 786.646.2402
www.MLG.Miami ▪ Info@MLG.Miami

42.     However, none of the money in the Holiday Fund belongs to the Association.

43.     In late 2024, Plaintiff produced the proposed distribution of the money in the Holiday Fund, showing how much each employee would receive.

44.     Notably, the 2024 proposed distribution called for the same distribution as the preceding years, but proportionally modified to account for the different amount collected in one year versus the next.

45.     The Plaintiff had the Association's accountants prepare the checks for each employee.

46.     The Accountant then uploaded the checks to the Association's payment software, Enumerate, where it could be seen by the entire Board and required the approval of at least two Board members before being processed and paid.

47.     Critically, the checks were ultimately approved by the requisite two Board members and subsequently processed and sent to the employees.

48.     Notably, none of the Defendants objected to or ever referenced the Holiday Fund payments until they needed to fabricate grounds to terminate for cause.

49.     Pursuant to their agreement, Defendants agreed to pay Plaintiff $100,000.00 per year, which required them to pay $3,846.15 for each two week pay period.

50.     Defendants improperly terminated Diaz's employment with immediate effect on Sunday, February 23, 2025.

51.     Pursuant to the date of the improper termination, the last paycheck from the Defendants should have paid Diaz her wages for February 17, 2025 through February 23, 2025.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

52.     Plaintiff was, and is still, owed $1,923.07 in unpaid wages for the aforementioned dates.

53.     However, the gross pay in the final paycheck the Plaintiff received from the Defendants was only $423.07.

54.     Notably, and not by coincidence, the $423.07 gross pay amounts to the difference between the $1,923.07 that Diaz should've been paid, and the $1,500.00 that she was paid from the Holiday Fund.

55.     The Fair Labor Standards Act, also known as the FLSA, requires that wages be paid timely on the day they are due. 29 U.S.C. § 206(b).

56.     Defendant failed to pay wages owed to Diaz on the regular pay date in violation of 29 U.S.C. § 206(b) resulting in wage violations. As of the filing of this complaint, Diaz is owed wages for work provided for the benefit of Defendant.

57.     Diaz is entitled to recover liquidated damages for all unearned wages that have not been paid by Defendant.

58.     Defendant knew and/or showed reckless disregard for the provisions of the FLSA regarding payment of wages to Diaz and they intentionally chose not to pay Diaz for wages earned.

59.     In fact, when Defendant stated that they intended to deduct $1,500.00 from Diaz's final paycheck, Diaz's undersigned counsel immediately warned that such action would violate the FLSA and result in legal action; despite being directly warned, Defendant chose to willfully violate the FLSA anyway.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

60.     Diaz has retained the offices of the undersigned counsel and is required to pay a reasonable attorney's fees and costs associated with the filing of this action and is entitled to reimbursement of her reasonable attorneys' fees and costs from Defendant.

**WHEREFORE**, Diaz requests compensatory damages, liquidated damages and reasonable attorney fees and costs from Defendants, jointly and severally, pursuant to the Fair Labor Standards Act as cited above, in an amount to be proven at the time of trial from Defendants failure to timely pay wages, or as much is allowed by the Fair Labor Standards Act, whichever is greater. In the event that Diaz does not recover liquidated damages, then Diaz will seek an award of prejudgment interest for damages and any and all other relief this Court deems reasonable and just under the circumstances.

## COUNT II
## FAILURE TO MAKE PROMPT PAYMENT – HARPAZ

61.     Diaz re-alleges and re-avers paragraphs 1 through 38 as fully set forth herein, as to each Defendant.

62.     Towards the end of each year, the residents of Sands Pointe make voluntary contributions to a fund for the purpose of providing a holiday bonus/tip to the employees of Sands Pointe (the "Holiday Fund").

63.     The Association collects and holds funds donated for the Holiday Fund and later takes care of distributing the funds to all the Association's employees.

64.     However, none of the money in the Holiday Fund belongs to the Association.

65.     In late 2024, Plaintiff produced the proposed distribution of the money in the Holiday Fund, showing how much each employee would receive.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

66.     Notably, the 2024 proposed distribution called for the same distribution as the preceding years, but proportionally modified to account for the different amount collected in one year versus the next.

67.     The Plaintiff had the Association's accountants prepare the checks for each employee.

68.     The Accountant then uploaded the checks to the Association's payment software, Enumerate, where it could be seen by the entire Board and required the approval of at least two Board members before being processed and paid.

69.     Critically, the checks were ultimately approved by the requisite two Board members, and subsequently processed and sent to the employees.

70.     Notably, none of the Defendants objected to or ever referenced the Holiday Fund payments until they needed to fabricate grounds to terminate for cause.

71.     Pursuant to their agreement, Defendants agreed to pay Plaintiff $100,000.00 per year, which required them to pay $3,846.15 for each two week pay period.

72.     Defendants improperly terminated Diaz's employment with immediate effect on Sunday, February 23, 2025.

73.     Pursuant to the date of the improper termination, the last paycheck from the Defendants should have paid Diaz her wages for February 17, 2025 through February 23, 2025.

74.     Plaintiff was, and is still, owed $1,923.07 in unpaid wages for the aforementioned dates.

75.     However, the gross pay in the final paycheck the Plaintiff received from the Defendants was only $423.07.

Morera Law Group, P.A.
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ ph 786.789.4546 ▪ fax 786.646.2402
www.MLG.Miami ▪ Info@MLG.Miami

76.     Notably, and not by coincidence, the $423.07 gross pay amounts to the difference between the $1,923.07 that Diaz should've been paid, and the $1,500.00 that she was paid from the Holiday Fund.

77.     The Fair Labor Standards Act, also known as the FLSA, requires that wages be paid timely on the day they are due. 29 U.S.C. § 206(b).

78.     Defendant failed to pay wages owed to Diaz on the regular pay date in violation of 29 U.S.C. § 206(b) resulting in wage violations. As of the filing of this complaint, Diaz is owed wages for work provided for the benefit of Defendant.

79.     Diaz is entitled to recover liquidated damages for all unearned wages that have not been paid by Defendant.

80.     Defendant knew and/or showed reckless disregard for the provisions of the FLSA regarding payment of wages to Diaz and they intentionally chose not to pay Diaz for wages earned.

81.     In fact, when Defendant stated that they intended to deduct $1,500.00 from Diaz's final paycheck, Diaz's undersigned counsel immediately warned that such action would violate the FLSA and result in legal action; despite being directly warned, Defendant chose to willfully violate the FLSA anyway.

82.     Diaz has retained the offices of the undersigned counsel and is required to pay a reasonable attorney's fees and costs associated with the filing of this action and is entitled to reimbursement of her reasonable attorneys' fees and costs from Defendant.

**WHEREFORE**, Diaz requests compensatory damages, liquidated damages and reasonable attorney fees and costs from Defendants, jointly and severally, pursuant to the Fair Labor Standards Act as cited above, in an amount to be proven at the time of trial from Defendants

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

failure to timely pay wages, or as much is allowed by the Fair Labor Standards Act, whichever is greater. In the event that Diaz does not recover liquidated damages, then Diaz will seek an award of prejudgment interest for damages and any and all other relief this Court deems reasonable and just under the circumstances.

**COUNT III**
**FAILURE TO MAKE PROMPT PAYMENT – HERMAN**

83.     Diaz re-alleges and re-avers paragraphs 1 through 38 as fully set forth herein, as to each Defendant.

84.     Towards the end of each year, the residents of Sands Pointe make voluntary contributions to a fund for the purpose of providing a holiday bonus/tip to the employees of Sands Pointe (the "Holiday Fund").

85.     The Association collects and holds funds donated for the Holiday Fund and later takes care of distributing the funds to all the Association's employees.

86.     However, none of the money in the Holiday Fund belongs to the Association.

87.     In late 2024, Plaintiff produced the proposed distribution of the money in the Holiday Fund, showing how much each employee would receive.

88.     Notably, the 2024 proposed distribution called for the same distribution as the preceding years, but proportionally modified to account for the different amount collected in one year versus the next.

89.     The Plaintiff had the Association's accountants prepare the checks for each employee.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

90.     The Accountant then uploaded the checks to the Association's payment software, Enumerate, where it could be seen by the entire Board and required the approval of at least two Board members before being processed and paid.

91.     Critically, the checks were ultimately approved by the requisite two Board members, and subsequently processed and sent to the employees.

92.     Notably, none of the Defendants objected to or ever referenced the Holiday Fund payments until they needed to fabricate grounds to terminate for cause.

93.     Pursuant to their agreement, Defendants agreed to pay Plaintiff $100,000.00 per year, which required them to pay $3,846.15 for each two week pay period.

94.     Defendants improperly terminated Diaz's employment with immediate effect on Sunday, February 23, 2025.

95.     Pursuant to the date of the improper termination, the last paycheck from the Defendants should have paid Diaz her wages for February 17, 2025 through February 23, 2025.

96.     Plaintiff was, and is still, owed $1,923.07 in unpaid wages for the aforementioned dates.

97.     However, the gross pay in the final paycheck the Plaintiff received from the Defendants was only $423.07.

98.     Notably, and not by coincidence, the $423.07 gross pay amounts to the difference between the $1,923.07 that Diaz should've been paid, and the $1,500.00 that she was paid from the Holiday Fund.

99.     The Fair Labor Standards Act, also known as the FLSA, requires that wages be paid timely on the day they are due. 29 U.S.C. § 206(b).

Morera Law Group, P.A.
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ ph 786.789.4546 ▪ fax 786.646.2402
www.MLG.Miami ▪ Info@MLG.Miami

100.     Defendant failed to pay wages owed to Diaz on the regular pay date in violation of 29 U.S.C. § 206(b) resulting in wage violations. As of the filing of this complaint, Diaz is owed wages for work provided for the benefit of Defendant.

101.     Diaz is entitled to recover liquidated damages for all unearned wages that have not been paid by Defendant.

102.     Defendant knew and/or showed reckless disregard for the provisions of the FLSA regarding payment of wages to Diaz and they intentionally chose not to pay Diaz for wages earned.

103.     In fact, when Defendant stated that they intended to deduct $1,500.00 from Diaz's final paycheck, Diaz's undersigned counsel immediately warned that such action would violate the FLSA and result in legal action; despite being directly warned, Defendant chose to willfully violate the FLSA anyway.

104.     Diaz has retained the offices of the undersigned counsel and is required to pay a reasonable attorney's fees and costs associated with the filing of this action and is entitled to reimbursement of her reasonable attorneys' fees and costs from Defendant.

**WHEREFORE**, Diaz requests compensatory damages, liquidated damages and reasonable attorney fees and costs from Defendants, jointly and severally, pursuant to the Fair Labor Standards Act as cited above, in an amount to be proven at the time of trial from Defendants failure to timely pay wages, or as much is allowed by the Fair Labor Standards Act, whichever is greater. In the event that Diaz does not recover liquidated damages, then Diaz will seek an award of prejudgment interest for damages and any and all other relief this Court deems reasonable and just under the circumstances.

**COUNT IV**

Page 14 of 26

## **FAILURE TO MAKE PROMPT PAYMENT – KATZ**

105.    Diaz re-alleges and re-avers paragraphs 1 through 38 as fully set forth herein, as to each Defendant.

106.    Towards the end of each year, the residents of Sands Pointe make voluntary contributions to a fund for the purpose of providing a holiday bonus/tip to the employees of Sands Pointe (the "Holiday Fund").

107.    The Association collects and holds funds donated for the Holiday Fund and later takes care of distributing the funds to all the Association's employees.

108.    However, none of the money in the Holiday Fund belongs to the Association.

109.    In late 2024, Plaintiff produced the proposed distribution of the money in the Holiday Fund, showing how much each employee would receive.

110.    Notably, the 2024 proposed distribution called for the same distribution as the preceding years, but proportionally modified to account for the different amount collected in one year versus the next.

111.    The Plaintiff had the Association's accountants prepare the checks for each employee.

112.    The Accountant then uploaded the checks to the Association's payment software, Enumerate, where it could be seen by the entire Board and required the approval of at least two Board members before being processed and paid.

113.    Critically, the checks were ultimately approved by the requisite two Board members, and subsequently processed and sent to the employees.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

114.    Notably, none of the Defendants objected to or ever referenced the Holiday Fund payments until they needed to fabricate grounds to terminate for cause.

115.    Pursuant to their agreement, Defendants agreed to pay Plaintiff $100,000.00 per year, which required them to pay $3,846.15 for each two week pay period.

116.    Defendants improperly terminated Diaz's employment with immediate effect on Sunday, February 23, 2025.

117.    Pursuant to the date of the improper termination, the last paycheck from the Defendants should have paid Diaz her wages for February 17, 2025 through February 23, 2025.

118.    Plaintiff was, and is still, owed $1,923.07 in unpaid wages for the aforementioned dates.

119.    However, the gross pay in the final paycheck the Plaintiff received from the Defendants was only $423.07.

120.    Notably, and not by coincidence, the $423.07 gross pay amounts to the difference between the $1,923.07 that Diaz should've been paid, and the $1,500.00 that she was paid from the Holiday Fund.

121.    The Fair Labor Standards Act, also known as the FLSA, requires that wages be paid timely on the day they are due. 29 U.S.C. § 206(b).

122.    Defendant failed to pay wages owed to Diaz on the regular pay date in violation of 29 U.S.C. § 206(b) resulting in wage violations. As of the filing of this complaint, Diaz is owed wages for work provided for the benefit of Defendant.

123.    Diaz is entitled to recover liquidated damages for all unearned wages that have not been paid by Defendant.

Morera Law Group, P.A.
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ ph 786.789.4546 ▪ fax 786.646.2402
www.MLG.Miami ▪ Info@MLG.Miami

124.     Defendant knew and/or showed reckless disregard for the provisions of the FLSA regarding payment of wages to Diaz and they intentionally chose not to pay Diaz for wages earned.

125.     In fact, when Defendant stated that they intended to deduct $1,500.00 from Diaz's final paycheck, Diaz's undersigned counsel immediately warned that such action would violate the FLSA and result in legal action; despite being directly warned, Defendant chose to willfully violate the FLSA anyway.

126.     Diaz has retained the offices of the undersigned counsel and is required to pay a reasonable attorney's fees and costs associated with the filing of this action and is entitled to reimbursement of her reasonable attorneys' fees and costs from Defendant.

**WHEREFORE**, Diaz requests compensatory damages, liquidated damages and reasonable attorney fees and costs from Defendants, jointly and severally, pursuant to the Fair Labor Standards Act as cited above, in an amount to be proven at the time of trial from Defendants failure to timely pay wages, or as much is allowed by the Fair Labor Standards Act, whichever is greater. In the event that Diaz does not recover liquidated damages, then Diaz will seek an award of prejudgment interest for damages and any and all other relief this Court deems reasonable and just under the circumstances.

### COUNT V
### FAILURE TO MAKE PROMPT PAYMENT – WIENER

127.     Diaz re-alleges and re-avers paragraphs 1 through 38 as fully set forth herein, as to each Defendant.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

128.     Towards the end of each year, the residents of Sands Pointe make voluntary contributions to a fund for the purpose of providing a holiday bonus/tip to the employees of Sands Pointe (the "Holiday Fund").

129.     The Association collects and holds funds donated for the Holiday Fund and later takes care of distributing the funds to all the Association's employees.

130.     However, none of the money in the Holiday Fund belongs to the Association.

131.     In late 2024, Plaintiff produced the proposed distribution of the money in the Holiday Fund, showing how much each employee would receive.

132.     Notably, the 2024 proposed distribution called for the same distribution as the preceding years, but proportionally modified to account for the different amount collected in one year versus the next.

133.     The Plaintiff had the Association's accountants prepare the checks for each employee.

134.     The Accountant then uploaded the checks to the Association's payment software, Enumerate, where it could be seen by the entire Board and required the approval of at least two Board members before being processed and paid.

135.     Critically, the checks were ultimately approved by the requisite two Board members, and subsequently processed and sent to the employees.

136.     Notably, none of the Defendants objected to or ever referenced the Holiday Fund payments until they needed to fabricate grounds to terminate for cause.

137.     Pursuant to their agreement, Defendants agreed to pay Plaintiff $100,000.00 per year, which required them to pay $3,846.15 for each two week pay period.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

138.    Defendants improperly terminated Diaz's employment with immediate effect on Sunday, February 23, 2025.

139.    Pursuant to the date of the improper termination, the last paycheck from the Defendants should have paid Diaz her wages for February 17, 2025 through February 23, 2025.

140.    Plaintiff was, and is still, owed $1,923.07 in unpaid wages for the aforementioned dates.

141.    However, the gross pay in the final paycheck the Plaintiff received from the Defendants was only $423.07.

142.    Notably, and not by coincidence, the $423.07 gross pay amounts to the difference between the $1,923.07 that Diaz should've been paid, and the $1,500.00 that she was paid from the Holiday Fund.

143.    The Fair Labor Standards Act, also known as the FLSA, requires that wages be paid timely on the day they are due. 29 U.S.C. § 206(b).

144.    Defendant failed to pay wages owed to Diaz on the regular pay date in violation of 29 U.S.C. § 206(b) resulting in wage violations. As of the filing of this complaint, Diaz is owed wages for work provided for the benefit of Defendant.

145.    Diaz is entitled to recover liquidated damages for all unearned wages that have not been paid by Defendant.

146.    Defendant knew and/or showed reckless disregard for the provisions of the FLSA regarding payment of wages to Diaz and they intentionally chose not to pay Diaz for wages earned.

147.    In fact, when Defendant stated that they intended to deduct $1,500.00 from Diaz's final paycheck, Diaz's undersigned counsel immediately warned that such action would violate the

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

FLSA and result in legal action; despite being directly warned, Defendant chose to willfully violate the FLSA anyway.

148.    Diaz has retained the offices of the undersigned counsel and is required to pay a reasonable attorney's fees and costs associated with the filing of this action and is entitled to reimbursement of her reasonable attorneys' fees and costs from Defendant.

**WHEREFORE**, Diaz requests compensatory damages, liquidated damages and reasonable attorney fees and costs from Defendants, jointly and severally, pursuant to the Fair Labor Standards Act as cited above, in an amount to be proven at the time of trial from Defendants failure to timely pay wages, or as much is allowed by the Fair Labor Standards Act, whichever is greater. In the event that Diaz does not recover liquidated damages, then Diaz will seek an award of prejudgment interest for damages and any and all other relief this Court deems reasonable and just under the circumstances.

## COUNT VI
## <u>FAILURE TO MAKE PROMPT PAYMENT – WEINSTEIN</u>

149.    Diaz re-alleges and re-avers paragraphs 1 through 38 as fully set forth herein, as to each Defendant.

150.    Towards the end of each year, the residents of Sands Pointe make voluntary contributions to a fund for the purpose of providing a holiday bonus/tip to the employees of Sands Pointe (the "Holiday Fund").

151.    The Association collects and holds funds donated for the Holiday Fund and later takes care of distributing the funds to all the Association's employees.

152.    However, none of the money in the Holiday Fund belongs to the Association.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ ph 786.789.4546 ▪ fax 786.646.2402
**www.MLG.Miami** ▪ Info@MLG.Miami

153.    In late 2024, Plaintiff produced the proposed distribution of the money in the Holiday Fund, showing how much each employee would receive.

154.    Notably, the 2024 proposed distribution called for the same distribution as the preceding years, but proportionally modified to account for the different amount collected in one year versus the next.

155.    The Plaintiff had the Association's accountants prepare the checks for each employee.

156.    The Accountant then uploaded the checks to the Association's payment software, Enumerate, where it could be seen by the entire Board and required the approval of at least two Board members before being processed and paid.

157.    Critically, the checks were ultimately approved by the requisite two Board members, and subsequently processed and sent to the employees.

158.    Notably, none of the Defendants objected to or ever referenced the Holiday Fund payments until they needed to fabricate grounds to terminate for cause.

159.    Pursuant to their agreement, Defendants agreed to pay Plaintiff $100,000.00 per year, which required them to pay $3,846.15 for each two week pay period.

160.    Defendants improperly terminated Diaz's employment with immediate effect on Sunday, February 23, 2025.

161.    Pursuant to the date of the improper termination, the last paycheck from the Defendants should have paid Diaz her wages for February 17, 2025 through February 23, 2025.

162.    Plaintiff was, and is still, owed $1,923.07 in unpaid wages for the aforementioned dates.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

163.    However, the gross pay in the final paycheck the Plaintiff received from the Defendants was only $423.07.

164.    Notably, and not by coincidence, the $423.07 gross pay amounts to the difference between the $1,923.07 that Diaz should've been paid, and the $1,500.00 that she was paid from the Holiday Fund.

165.    The Fair Labor Standards Act, also known as the FLSA, requires that wages be paid timely on the day they are due. 29 U.S.C. § 206(b).

166.    Defendant failed to pay wages owed to Diaz on the regular pay date in violation of 29 U.S.C. § 206(b) resulting in wage violations. As of the filing of this complaint, Diaz is owed wages for work provided for the benefit of Defendant.

167.    Diaz is entitled to recover liquidated damages for all unearned wages that have not been paid by Defendant.

168.    Defendant knew and/or showed reckless disregard for the provisions of the FLSA regarding payment of wages to Diaz and they intentionally chose not to pay Diaz for wages earned.

169.    In fact, when Defendant stated that they intended to deduct $1,500.00 from Diaz's final paycheck, Diaz's undersigned counsel immediately warned that such action would violate the FLSA and result in legal action; despite being directly warned, Defendant chose to willfully violate the FLSA anyway.

170.    Diaz has retained the offices of the undersigned counsel and is required to pay a reasonable attorney's fees and costs associated with the filing of this action and is entitled to reimbursement of her reasonable attorneys' fees and costs from Defendant.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

**WHEREFORE**, Diaz requests compensatory damages, liquidated damages and reasonable attorney fees and costs from Defendants, jointly and severally, pursuant to the Fair Labor Standards Act as cited above, in an amount to be proven at the time of trial from Defendants failure to timely pay wages, or as much is allowed by the Fair Labor Standards Act, whichever is greater. In the event that Diaz does not recover liquidated damages, then Diaz will seek an award of prejudgment interest for damages and any and all other relief this Court deems reasonable and just under the circumstances.

### COUNT VII- BREACH OF CONTRACT AGAINST ALL DEFENDANTS

171.    Diaz re-alleges and re-avers paragraphs 1 through 38 as fully set forth herein, as to each Defendant.

172.    Plaintiff and Defendants entered into an enforceable contract under which Plaintiff was required to provide certain services to Defendant for 5 years, while Defendants, in turn, were required to pay Plaintiff the required compensation under the Contract. A true and correct copy of the Contract is attached and incorporated herein as **Exhibit A**.

173.    The existence and validity of the Contract is evidenced by the continuous and mutual performance of the parties for approximately 3 years, until Defendant wrongfully terminated the Contract.

174.    Plaintiff fulfilled all her obligations under the Contract, and Defendant had no legitimate basis for terminating her employment for cause.

175.    Defendant breached the Contract by (i) wrongfully terminating Plaintiff without cause, while falsely asserting a for cause basis; and (ii) failing to compensate Plaintiff the full amount owed under the Contract.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ ph 786.789.4546 ▪ fax 786.646.2402
**www.MLG.Miami ▪ Info@MLG.Miami**

176.     Defendant's breach of the Contract caused Plaintiff to suffer significant damage and financial harm which include but are not limited to lost wages, benefits, and other contractual compensation, including, without limitation, $201,917.81 in unpaid wages plus $11,538.48 in unused vacation pay, totaling $213,456.29.

177.     Plaintiff has retained the offices of the undersigned counsel and is required to pay them reasonable attorney's fees and costs associated with the filing of this action and is entitled to reimbursement of her reasonable attorneys' fees and costs from Defendants pursuant to the Contract and § 448.08, Fla. Stat.

**WHEREFORE**, Plaintiff respectfully demands judgment in her favor and against all Defendants, jointly and severally, and an award of damages in an amount to be calculated at trial, along with reimbursement of her reasonable attorneys' fees and costs, pre- and post-judgment interest, as well as such other relief as this Court deems just and proper.

### COUNT VIII- UNJUST ENRICHMENT AGAINST ALL DEFENDANTS[1]

178.     Diaz re-alleges and re-avers paragraphs 1 through 38 as fully set forth herein, as to each Defendant.

179.     In exchange for labor provided by Diaz, Defendants agreed to compensate Diaz at a rate of $100,000.00 per year for a period of five years.

180.     Based on the compensation rate offered, and the five-year term, Diaz accepted and began working for Defendants in February of 2022, providing labor for the benefit of the Defendants.

---

[1] This count is pled in the alternative to Count VII for Breach of Contract against all Defendants.

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami ▪ Info@MLG.Miami**

181. Diaz conferred a benefit on Defendants by providing labor for their benefit in anticipation of compensation and continuous employment for a five-year term.

182. Defendants voluntarily accepted and retained the benefit of Diaz's labor.

183. However, Defendants did not abide by the compensation rate nor the term of employment that was agreed to between the parties.

184. The circumstances are such that it would be inequitable to allow Defendants to retain the benefit conferred upon them without compensating her properly.

**WHEREFORE**, Plaintiff respectfully demands judgment in her favor and against all Defendants, jointly and severally, and an award of damages in an amount to be calculated at trial, along with reimbursement of her reasonable attorneys' fees and costs under § 448.08, Fla. Stat., pre- and post-judgment interest, as well as such other relief as this Court deems just and proper.

## COUNT IX- PROMISSORY ESTOPPEL AGAINST ALL DEFENDANTS[2]

185. Diaz re-alleges and re-avers paragraphs 1 through 38 as fully set forth herein, as to each Defendant.

186. In exchange for labor provided by Diaz, Defendants represented that they would compensate Diaz at a rate of $100,000.00 per year for a period of five years.

187. Contrary to the foregoing, Defendants did not abide by the compensation rate nor the term of employment that was agreed to between the parties.

188. Diaz, who was 75 years old at the time of the agreement, reasonably relied on the Defendants' representations as to the compensation and length of the term.

---

[2] This count is pled in the alternative to Count VII for Breach of Contract against all Defendants.

Page 25 of 26

_____

**Morera Law Group, P.A.**
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ **ph** 786.789.4546 ▪ **fax** 786.646.2402
**www.MLG.Miami** ▪ **Info@MLG.Miami**

189.    As a result of the Defendants' representations, and Diaz's reasonable reliance thereon, Diaz has suffered, and continues to suffer, a detrimental change of position; namely, it is nearly impossible to obtain employment on the same or similar terms to her prior employment with Defendants now that she is 78 years old.

**WHEREFORE**, Plaintiff respectfully demands judgment in her favor and against all Defendants, jointly and severally, and an award of damages in an amount to be calculated at trial, along with reimbursement of her reasonable attorneys' fees and costs under § 448.08, Fla. Stat., pre- and post-judgment interest, as well as such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, Diaz, demands a trial by jury on all issues triable by a jury as a matter of right.

Respectfully submitted on this 20th day of May, 2025.

Bryan Morera, Esq.
Florida Bar No. 1002359
**MORERA LAW GROUP, P.A.**
14100 Palmetto Frontage Road, Suite 370
Miami Lakes, Florida 33016
Telephone: (786) 789-4546
Facsimile: (786) 646-2402
Email: Bryan@MLG.Miami
Secondary Email: Service@MLG.Miami

*Counsel for Plaintiff*

Morera Law Group, P.A.
14100 Palmetto Frontage Road, Suite 370, Miami Lakes, FL 33016 ▪ ph 786.789.4546 ▪ fax 786.646.2402
www.MLG.Miami ▪ Info@MLG.Miami