UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-cv-22287-ALTMAN

DANIA DIAZ,

     *Plaintiff*,

v.

SANDS POINTE OCEAN BEACH RESORT
CONDOMINIUM ASSOCIATION, INC., *et al.*,

     *Defendants*.

_____/

**ORDER**

A manager sued her employer after she was terminated, alleging federal and state-law claims. The Defendants now move to dismiss all seven counts. After careful review, we **GRANT** the motion to dismiss.

THE FACTS

Our Plaintiff—Dania Diaz—"was employed" at the Sands Pointe Ocean Beach Resort Condominium Association, Inc. (the "Association") "under a written contract." Complaint [ECF No. 1] ¶¶ 4, 22. That contract provided "for a five-year term commencing on February 28, 2022[,] and terminating on February 27, 2027," and paid "$100,000.00 per year." *Id.* ¶¶ 24–25. On "January 22, 2025," the Plaintiff received a "Notice to Cure," which "cit[ed] alleged performance deficiencies." *Id.* ¶ 28 (quotation marks omitted). According to the Complaint, the Plaintiff "responded to the Notice to Cure, denying all allegations and demonstrating that the accusations were either baseless, beyond her control, or due to . . . interference and mismanagement." *Id.* ¶ 29. Still, she claims that her employers "further engaged in a campaign of harassment and hostility, making [her] working conditions intolerable in an attempt to force her resignation and evade their contractual obligations."

*Id.* ¶ 30. On "February 23, 2025," her employers "terminated" her with "two years remaining on the Contract[.]" *Id.* ¶ 31. "At the time of termination," the Complaint tells us, "damages under the Contract amounted to . . . $213,456.29," and "$1,500.00" were "illegally withheld" from her "final paycheck." *Id.* ¶¶ 33–34.

In May 2025, our Plaintiff sued the Association and five individuals—Avi Harpaz, Mel Herman, Jacob Katz, Arthur Wiener, and Felix Weinstein—with "operational control over . . . Sands Pointe" and "direct[ ] involve[ment] in decisions affecting employee compensation." *Id.* ¶¶ 6–14. The Complaint brings a claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(b), against each of the six Defendants. *See id.* ¶¶ 39–170. Count VII alleges a breach-of-contract claim against the Defendants. *See id.* ¶¶ 171–77. Count VIII asserts an unjust-enrichment claim against the Defendants. *See id.* ¶¶ 178–84. And Count VIII advances a promissory-estoppel claim against the Defendants. *See id.* ¶¶ 185–89.

In September 2025, we dismissed Wiener from the action because the Plaintiff failed to effectuate service of process. *See* Paperless Order [ECF No. 18]. That same month, the Association, Harpaz, Herman, Katz, and Weinstein (collectively, the "Defendants") filed a Motion to Dismiss (the "MTD") [ECF No. 22]. In October 2025, the Plaintiff filed a Response in Opposition to the MTD (the "Response") [ECF No. 23]. Because the Defendants never filed a reply brief, *see generally* Docket, the MTD is ripe for adjudication.

## THE LAW

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1221 (S.D. Fla. 2023) (Altman, J.) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

### ANALYSIS

The MTD challenges the Complaint as a whole. It argues that the Complaint fails to state claims under the FLSA, that we should decline to exercise supplemental jurisdiction over the remaining state-law claims, and that (in any event) those state-law claims fail on the merits. We can begin—and end—with the first two arguments.

### I.      The FLSA Claims

The Defendants contend that the Plaintiff's own allegations, "accepted as true, establish that [she] was employed in a bona fide administrative and executive capacity such that she was an exempt employee under Section 213 of the FLSA." MTD at 4–5. Accordingly, they argue, "dismissal of Counts I, II, III, IV and VI is warranted." *Id.* at 5.[1] We agree.

The FLSA provides that "[e]very employer shall pay to each of his employees . . . who in any work week is engaged in commerce or in the production of goods for commerce . . . not less than the minimum wage rate[.]" § 206(b). "While the FLSA does not specify when payment of wages must be made, the former Fifth Circuit held that liquidated damages are available under the act to an employee if the employer failed to pay wages or overtime on the regular payment date." *Arroyave v. Rossi*, 296 F. App'x 835, 836 (11th Cir. 2008); *see also Atlantic Co. v. Broughton,* 146 F.2d 480, 482 (5th Cir. 1945); *Del Rosario v. Lab. Ready Se., Inc.*, 124 F. Supp. 3d 1300, 1313 (S.D. Fla. 2015) (Lenard, J.) ("[T]he rule in the Eleventh Circuit appears to be that an employer must pay its employees within a reasonable

---

[1] As noted above, we dismissed Count V when we terminated Wiener from this action. *See* Paperless Order.

time after the end of the pay period. Minimum wages become unpaid, and an employer is liable under the FLSA for liquidated damages, when they are unreasonably late during the relevant period." (quotation marks omitted)).

Still, the FLSA "carves out employees 'employed in a bona fide executive, administrative, or professional capacity' from its minimum-wage and overtime protections." *Bumgardner v. Forensic Pathology Servs., P.C.*, 2026 WL 366379, at *4 (11th Cir. Feb. 10, 2026) (quoting 29 U.S.C. § 213(a)); *see also Brown v. Nexus Bus. Sols., LLC*, 29 F.4th 1315, 1318 (11th Cir. 2022) ("This provision is often referred to in shorthand as the administrative exemption."). "To decide who falls within this exemption, the Department of Labor uses a three-pronged test[:] An employee is an administrative worker if (1) her salary exceeds the minimum established by the regulation, (2) she mainly performs 'office or non-manual work directly related to the management or general business operations of the employer' or its customers, and (3) her 'primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.'" *Ibid.* (quoting 29 C.F.R. § 541.200(a)).

Our Plaintiff appended her contract to the Complaint. *See* Employment Agreement [ECF No. 1-1]. That contract classifies her as "the exclusive Manager for the Association." *Id.* at 1. It makes her "responsible for the management and operation of the Association." *Ibid.* And it authorizes her (among other things) to "take charge of the administration and operation of the Association," "implement policies adopted by the Board of Directors," "direct and assign employees," "hire and terminate any employee subject to the prior approval of the President or another Officer," "organize and arrange the administrative staff and supervisory staff as best serves the Association," "suggest regulations, rules, policy[,] and procedures for the operation of the Association," "assist in resolving individual owner's problems as they pertain to the Association," "enforce[ ] . . . the provisions of the Association's governing documents," and "demand and receive all monies due or to become due to

the Association and to take such action in the name of the Association as may be determined by the Board of Directors to be necessary to collect delinquent bills[.]" *Id.* at 1–2.

Those duties trigger the administrative exemption. The contract paid the Plaintiff "$3,846.15 for each two week pay period," Complaint ¶ 159, charged her with managing the Association, and afforded "meaningful discretion," *Brown*, 29 F.4th at 1318, over the Association's staff, budget, and operation. The Plaintiff thus qualifies as a "back office employee[ ] who manage[s] others or performs a supporting function that assists with the running or servicing of the business as a whole." *Bumgardner*, 2026 WL 366379, at *5 (cleaned up). And that means she's an "exempt employee under Section 213." MTD at 5.

Resisting this conclusion, the Plaintiff mounts two counterarguments. *First*, she maintains that "her exemption status under the FLSA is wholly irrelevant" because she "is not seeking overtime wage nor claiming a minimum wage violation." Resp. at 2; *see also id.* at 3 ("DIAZ is not seeking raising a claim for minimum wage under § 206 or seeking overtime compensation under § 207; hence, exemption status under § 213 is irrelevant."). Instead, she says, "Section 206(b) of the Fair Labor Standards Act provides . . . a cause of action . . . for the[ ] failure to promptly pay . . . her wages[.]" *Id.* at 4. But that reading finds no support in § 213(a), which states that "section 206 . . . and 207 . . . shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity[.]" Nothing in the plain text of that provision shields prompt-payment claims from the administrative exemption. *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). And the Plaintiff fails to supply any caselaw to the

contrary. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").[2]

*Second*, the Plaintiff argues that "the determination of whether [she] is exempt or non-exempt under the FLSA involves factual determinations which render it inappropriate to resolve at the motion to dismiss stage." Resp. at 2. Not so. "In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference." *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019); *see also MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1303 (11th Cir. 2022) ("The Civil Rules of Procedure provide that an attachment to a complaint generally becomes part of the pleading for all purposes, including for ruling on a motion to dismiss." (cleaned up)). And here, as discussed, the contract itself labels the Plaintiff a "Manager" and assigns her administrative duties. So, accepting as true the Plaintiff's own allegations, we fail to see any unresolved factual questions. We therefore find that Counts I–IV and VI cannot state claims for relief.[3]

## II.    The State-Law Claims

That leaves only the state-law claims. The Defendants attack the plausibility of those three counts, *see* MTD at 9–14, but first ask that we "decline to exercise supplemental jurisdiction over [the] Plaintiff's remaining non-diverse, state law claims," *id.* at 9. In turn, the Plaintiff points to "strong arguments in favor of . . . exercising supplemental jurisdiction." Resp. at 4. Specifically, she insists that "substantial resources have already been invested by the Court and the parties," that finding a new

---

[2] Nor does the Plaintiff address the fact that she "was compensated on a salary basis greater than the minimum threshold of $684 per week." MTD at 6.

[3] To be sure, the Complaint alleges that the Defendants "intentionally and willfully misclassified Diaz as a Manager to circumvent the FLSA." Complaint ¶ 23. But "if allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). And, more to the point, the Plaintiff never challenges the *substance* of the duties outlined in the Employment Agreement. To the contrary, she represents that she "fulfilled all her obligations under the Contract[.]" Complaint ¶ 174.

forum "would cause delay, added expense, and inconvenience," that the state-law claims are "straightforward and involve well-settled areas of law," and that "forcing the Plaintiff to re-file in state court would substantially prejudice the Plaintiff"—"an elderly out-of-work woman on a very tight budget." *Id.* at 4–5.

"A district court has original subject matter jurisdiction over claims arising under federal law, 28 U.S.C. § 1331, and it has supplemental jurisdiction over 'all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Lewis v. ALDI Inc.*, 2026 WL 482206, at *5 (11th Cir. Feb. 20, 2026) (quoting 28 U.S.C. § 1367(a)). After dismissing the federal-claims portion of a complaint, a district court wields "the discretion either to continue to exercise supplemental jurisdiction over the state claims or to dismiss them." *Silas v. Sheriff of Broward Cnty.,* 55 F.4th 863, 865 (11th Cir. 2022). That discretion is "broad," and yet "concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed." *Id.* at 866; *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

We'll decline to continue exercising supplemental jurisdiction here. The case remains in its early stages. *See Lewis v. ALDI Inc.*, 2026 WL 482206, at *5 (11th Cir. Feb. 20, 2026) (noting that "federalism concerns" favor dismissing state-law claims "especially when the federal claims are dismissed in the early stages of the lawsuit"). The Plaintiff doesn't argue that she'd be unable to pursue Counts VII–VIII in state court. *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1568 (11th Cir. 1994) ("[D]ismissal may be an abuse of discretion where the state statute of limitations expired prior to dismissal of the anchor federal claim."). And we see no reason why we are better situated to adjudicate the breach-of-contract, unjust-enrichment, or promissory-estoppel claims. *See Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should

be the final arbiters of state law."); *Smola v. Sheriff, Hillsborough Cnty.*, 2025 WL 2977569, at *4 (11th Cir. Oct. 22, 2025) ("Federal courts defer to their state-court counterparts on questions of state law.").

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion to Dismiss [ECF No. 22] is **GRANTED** without prejudice.[4]

2. The Plaintiff shall file an amended complaint by **June 1, 2026**.

3. All hearings and deadlines are **TERMINATED**, and any pending motions are **DENIED as MOOT**.

4. The Clerk of Court shall **CLOSE** the case.

**DONE AND ORDERED** in the Southern District of Florida on May 16, 2026.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

[4] "[F]iling a motion is the proper method to request leave to amend a complaint[.]" *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (cleaned up). Our Plaintiff hasn't done so. *See* Resp. at 6 (requesting that, "if the Court orders the dismissal of any claims, that such dismissal be granted without prejudice and with leave to amend the complaint"). Nor does she explain how an amended complaint might overcome her FLSA-exemption status. Still, we "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). So, we'll give the Plaintiff one chance to amend her Complaint to plead additional facts that might avoid the obstacles we've highlighted above.